IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:20-CV-92-RJ

KENNETH E. SIMPSON, JR.,

    Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-23, -30] pursuant to Fed. R. Civ. P. 12(c). Claimant Kenneth E. Simpson, Jr. ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Acting Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on September 27, 2016, alleging disability beginning October 31, 2015. (R. 13). His claim was denied initially and upon reconsideration. (R. 13, 59–92). A hearing before the Administrative Law Judge ("ALJ") was held on February 27, 2019, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 29–53). Claimant amended his alleged onset date to April 18,

2017. (R. 13). On April 23, 2019, the ALJ issued a decision denying Claimant's request for benefits. (R. 10–28). On April 1, 2020, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred in evaluating Claimant's major depressive disorder and related non-exertional limitations. Pl.'s Mem. [DE-24] at 19–30.[1]

---

[1] The page numbers referenced in Claimant's memorandum correspond to the page numbers in the CM/ECF footer where they differ from the document's internal page numbers.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since April 18, 2017, the amended alleged onset date. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: low back pain, diabetes mellitus with neuropathy, osteoarthritis of the left knee with tibial plateau deformity, osteoarthritis of the right hip, hypertension, and history of shortness of breath upon exertion. (R. 15–16). The ALJ also found Claimant's alcohol use disorder, depression, and anxiety were nonsevere. (R. 16). At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17–18). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in no limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself, and mild limitation in interacting with others. (R. 16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with the following limitations:

> Due to a history of chronic back and bilateral lower extremity pain, the claimant can never climb ladders, ropes, or scaffolds or crawl. The claimant can occasionally climb ramps and stairs and crouch. The claimant can frequently but not constantly push/pull or operate foot controls with the bilateral lower extremities. Due to diabetes mellitus with neuropathy, the claimant must avoid concentrated exposure to vibrating tools or surfaces, extreme heat, and extreme cold. Due to a history of

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

shortness of breath and dyspnea upon exertion, the claimant must avoid concentrated exposure to respiratory irritants.

(R. 18–21). In making this assessment, the ALJ found Claimant's statements about his limitations to be not entirely consistent with the medical evidence and other evidence in the record. (R. 19).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a forklift operator. (R. 21). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 21–22).

## V. DISCUSSION

Claimant contends the ALJ erred in evaluating Claimant's major depressive disorder and related non-exertional limitations. Pl.'s Mem. [DE-24] at 19–30. Defendant argues the ALJ properly evaluated Claimant's mental impairments at step two and his functional limitations in developing the RFC. Def.'s Mem. [DE-31] at 7–13.

At step two the ALJ must consider the severity of a claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 416.922(a); *see Triplett v. Saul*, No. 19-2415, 2021 WL 2580589, at *2 (4th Cir. June 23, 2021) (explaining that an "impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.") (quoting *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984)). Examples of "basic work activities" related to mental ability include understanding, carrying out, and remembering simple instructions;

5

use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.922(b).

The special technique described above is applied in evaluating mental impairments. 20 C.F.R. § 416.920a(a). If a claimant's degree of limitation in the four functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself) is "none" or "mild," the impairment(s) are generally determined to be nonsevere unless other evidence indicates a more than minimal limitation in the ability to do basic work. *Id.* § 416.920a(d)(1). A "mild limitation" means functioning is "slightly limited," a "moderate limitation" means functioning is "fair," a "marked limitation" means functioning is "seriously limited," an "extreme limitation" means an inability to function, and "no limitation" means functioning is independent, appropriate, and effective. 20 C.F.R. § 404, subpt. P, app. 1 § 12.00F.2. The functional areas at issue in this case are the ability to concentrate, persist, or maintain pace and the ability to adapt or manage oneself. The functional area measuring an individual's ability to concentrate, persist, or maintain pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." *Id.* § 12.00E.3. The functional area measuring an individual's ability to adapt or manage oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." *Id.* § 12.00E.4.

"As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process[.]" *Pittman v. Astrue*, No. 5:08-CV-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008). Thus, any error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009

6

WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps). The burden of proof and production during the second step rests on the claimant. *Pass*, 65 F.3d at 1203.

At step two, the ALJ found Claimant's medically determinable impairments of alcohol use disorder, depression, and anxiety "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (R. 16). In applying the special technique, the ALJ found Claimant had no limitation in understanding, remembering, and applying information; concentrating persisting, and maintaining pace; or adapting and managing oneself, and a mild limitation in interacting with others. *Id.* The ALJ noted Claimant was not in special education classes in school, he previously performed semi-skilled work, and he did not testify to any problems in these areas. *Id.* In the area of interacting with others, the ALJ found Claimant was mildly limited, explaining as follows:

> He testified he has difficulty communicating with others but attributed this to throat pain and "vocal cord trouble" (testimony at 10:03:54 a.m.). The claimant further testified he is able to go out in public to places such as restaurants, church with his wife, and the homes of his friends (Id.). Numerous mental status evaluations show normal mood and affect, with intact memory and no deficits in orientation or alertness (B7F/11; B20F/10, 12, 25; B21F/5; B23F/4). He also denied having anxiety, depression, mood swings, concentration difficulties, memory difficulties, nervousness, or sleep disturbances (B17F/11; B18F/5; B19F/6, 8). In addition, the record does not show the claimant is receiving any ongoing specialized mental health treatment. However, as the claimant did complain of poor mood on a few occasions (Ex. B23F at p. 2), and there is evidence of previous anxiety, depression, and alcohol use, the undersigned finds "mild" limitation in interacting with others.

*Id.* Given that Claimant had no more than a mild limitation in any of the four areas, the ALJ found Claimant's mental impairments to be nonsevere. *Id.* The ALJ also considered the state agency consultants' opinions, at the initial and reconsideration levels, that Claimant did not have severe

mental impairments, noting that there was very little evidence of mental impairments in general, what little mental evidence there was showed mostly normal findings, and the opinions were consistent with the evidence and merited great weight. (R. 17). Finally, the ALJ considered a psychological consultative examining opinion from December 2006, indicating Claimant had some mental limitations, but afforded the opinion little weight because it was remote and the current record reflected a substantial change to Claimant's mental condition. *Id.* The ALJ did not further discuss any mental impairments in the RFC analysis and did not impose non-exertional limitations in the RFC. (R. 18–21).

Claimant contends the ALJ erred in finding his major depressive disorder was nonsevere and in analyzing the areas of adapting or managing oneself and concentrating, persisting, and maintaining pace, reasoning that his depression prevented him from managing his diabetes, caused a marked limitation in the ability to adapt and manage himself, and caused at least a moderate limitation in his ability to concentrate, persist, or maintain pace. Pl.'s Mem. [DE-24] at 21–27. Claimant cites treatment notes with Eileen Hubler, FNP from August 14, 2017, March 27 and August 14, 2018, and January 2019, (R. 489–98, 543–48), and with David Summerfied, NP-C from January 18, 2019, (R. 583–85), which he asserts contain evidence that his depression was severe and that it limited his ability to adapt and manage himself and to concentrate, persist, and maintain pace. Pl.'s Mem. [DE-24] at 22–23. Claimant also takes issue with the ALJ's assignment of great weight to the opinions of the state agency consultants that Claimant did not have severe mental impairments. *Id.* at 28–29.

Eileen Hubler was one of Claimant's primary treatment providers and managed his diabetes. Claimant saw her on August 17, 2017, related to his blood pressure, diabetes, neuropathy, and medication refills. (R. 499–503). Claimant's wife accompanied him and did most of the talking,

8

while Claimant was noted as "very quiet, poor eye contact, not very verbal with his comments." (R. 500). Claimant's diabetes had been uncontrolled at a visit three months prior, he had not followed up for management, and he was vague about how he was taking his insulin. *Id.* Claimant admitted some symptoms of depression, such as not feeling like doing anything about his disease and eating junk, and Hubler counseled that it "could be his poorly controlled [diabetes] making him feel sluggish, or it is common for depression to be part of a chronic illness." *Id.* The review of symptoms indicated "no feelings of hopelessness" and "no loss of interest in activities," but Hubler noted that Claimant needed further evaluation for depression. (R. 502).

Claimant returned to Hubler for a diabetes check seven months later on March 27, 2018. (R. 494–98). Hubler noted Claimant's diabetes was not well controlled, he had not made lifestyle changes, and he continued binging on junk, and he was not working, felt down, and was not interested in doing anything. (R. 494–95). Claimant's PHQ9 score indicated moderately severe depression, and he was noted to have decreased eye-to-eye contact, dysthymic and depressed mood, guilt, and slow rate of thought. (R. 496). Hubler cited depression as the major reason Claimant could not do better with his diabetes management; diagnosed major depressive disorder, single episode; prescribed Lexapro to help with his depression symptoms; and advised Claimant to return in one month. (R. 497).

Claimant did not return to Hubler until August 7, 2018, related to his diabetes and medication refills. (R. 489–93). His current medication list did not include Lexapro and his diagnoses no longer included depressive disorder. (R. 489–90). Hubler noted with respect to Claimant's questionable compliance that he "was not really motivated." (R. 491). At a January 2, 2019 appointment with Hubler for diabetes, blood pressure, and medication refills, Claimant was showing improvement with his A1C, which he attributed to being more compliant with insulin and

9

starting another medication. (R. 543). A review of symptoms indicated Claimant had no decrease in concentrating ability, no feelings of hopelessness, no loss of interest in activities, and no anxiety. *Id.* While Claimant had not titrated up his insulin as instructed, it was noted that he was intentionally underdosing his medication regimen due to financial hardship. (R. 544, 546). On January 18, 2019, Claimant was unable to receive a cortisone injection due to Claimant's uncontrolled diabetes. (R. 585).

The ALJ did not discuss these specific treatment notes in assessing the severity of Claimant's depression at step two, but the court finds any error in failing to do so was harmless. "As a general proposition, we apply the harmless error doctrine in reviewing a decision of the Commissioner denying a benefits claim." *Keller v. Berryhill*, 754 F. App'x 193, 199 (4th Cir. 2018) (citing *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017)). However, "[w]here an insufficient record precludes a determination that substantial evidence support[s] the ALJ's denial of benefits," the court may not affirm for harmless error. *Id.*

The records cited by Claimant show at most that Hubler at one point believed depression was contributing to Claimant's medication non-compliance, diagnosed a single episode of depressive disorder, and prescribed Lexapro, (R. 494–503), but she did not continue the depression diagnosis or medication on subsequent visits and later noted that Claimant was intentionally underdosing his medication regimen due to financial hardship, which accounts for his medication non-compliance and uncontrolled diabetes, (R. 489–93, 543–46). The ALJ relied on "mental status evaluations showing normal mood and affect, with intact memory and no deficits in orientation or alertness," (R. 379–85, 558, 560, 573, 580, 589); occasions where Claimant denied "anxiety, depression, mood swings, concentration difficulties, memory difficulties, nervousness, or sleep disturbances," (R. 529, 536, 543, 545); and Claimant's lack of testimony at the hearing regarding

10

difficulty concentrating or focusing. (R. 16). The evidence cited by the ALJ constitutes "substantial evidence" sufficient to affirm the ALJ's determination that Claimant's depressive disorder was nonsevere. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021) ("Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. Though the threshold for such evidentiary sufficiency is not high, it requires that more than a mere scintilla of evidence support the ALJ' s findings." ) (internal quotation marks and citations omitted). Furthermore, this evidence supports the ALJ's finding that Claimant had no limitations in adapting or managing oneself and concentrating, persisting, or maintaining pace; thus, the ALJ did not err in failing to impose additional non-exertional limitations in the RFC related to these functional areas. *See Tanzi F. v. Saul*, No. 3:19-CV-167 (HEH), 2021 WL 3205050, at *10 (E.D. Va. July 8, 2021) (finding the ALJ did not err in failing to include limitations related to concentration, persistence, and pace in the RFC, where the ALJ determined the claimant had no limitation in that functional domain), *report and recommendation adopted,* No. 3:19CV167-HEH, 2021 WL 3192162 (E.D. Va. July 28, 2021).

Claimant also takes issue with the ALJ's assignment of great weight to the state agency consultants' opinions that Claimant did not have severe mental impairments, because the opinions predated Claimant's acknowledgment of depression symptoms in August 2017 and his diagnosis of major depressive disorder in March 2018. Pl.'s Mem. [DE-24] at 28–29. Claimant's initial alleged onset date was October 31, 2015. At the initial review level, on January 6, 2017, Dr. Sandhu determined Claimant's depressive disorder was nonsevere. (R. 60–74). At the reconsideration level, on April 19, 2017, Dr. Richard H. Cyr-McMillon determined Claimant's depressive disorder, anxiety, and substance addiction disorder were nonsevere. (R. 75–91). Thereafter, Claimant amended his alleged onset date to April 18, 2017. (R. 13).

11

The ALJ found these opinions were consistent with the evidence and merited great weight, noting that there was very little evidence in the record of mental impairments. (R. 17). "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *see also Stricker v. Colvin*, 2016 WL 543216, at *3 (N.D. W. Va. Feb. 10, 2016) ("[A] lapse of time between State agency physician opinions and the ALJ's decision does not render the opinion stale."). As explained above, the records subsequent to the state agency opinions do not support a finding that Claimant's depressive disorder was severe, and the ALJ cited substantial evidence demonstrating that Claimant's depressive disorder was not severe. Thus, the ALJ did not err in determining that the state agency consultant's opinions were consistent with the evidence and were entitled to great weight. *See Funk v. Kijakazi*, No. 2:20-CV-38, 2022 WL 205478, at *8 (W.D. Va. Jan. 24, 2022) (rejecting argument that "the ALJ should have given the state agency consultants' assessments less weight because they were 'stale [and] outdated,' because they did not have the benefit of reviewing the updated records and opinions from her treating providers.").

The court cannot find that the evidence cited by Claimant would change the ALJ's decision regarding the severity of Claimant's depression or the ALJ's findings regarding Claimant's lack of limitations in the areas of adapting or managing himself and concentrating, persisting, or maintaining pace. The medical record here lacks the "depth and ambivalence" that would preclude the court from undertaking a "meaningful review," *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (citation omitted), and given that the ALJ's decision is supported by substantial evidence, remand is not appropriate. Accordingly, the Acting Commissioner's decision is affirmed.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-23] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-30] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the 11th day of February 2022.

Robert B. Jones, Jr.
United States Magistrate Judge

13